**SO ORDERED.**

**SIGNED this 5th day of January, 2012.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge
_____

Opinion Designated for Print and Online Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| In Re: | |
|---|---|
| **KEVIN LLOYD GANNON,** | CASE NO. 10-10629-7 |
| DEBTOR. | CHAPTER 7 |
| **STEVEN L. SPETH,** Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 10-5080 |
| **BANK OF AMERICA,** | |
| DEFENDANT. | |

**OPINION GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION**

This proceeding is before the Court on a motion for summary judgment filed by Defendant Bank of America (Bank). The Bank appears by counsel Richard M. Beleher of South & Associates, P.C. Plaintiff-Trustee Steven L. Speth appears by counsel Timothy

J. King of Speth & King.  The Court has reviewed the relevant pleadings and is now ready to rule.

**Facts**

The Trustee has conceded the truth of many relevant facts asserted in the Bank's motion, and the Court has supplemented those assertions with relevant facts drawn from a prior opinion entered in this proceeding.  These uncontroverted facts are sufficient to enable the Court to decide this case on the Bank's motion.

In 2007, the Debtor bought a used boat (Boat) and trailer from a dealer under an installment sales contract, giving the dealer security interests in both items.  The dealer immediately assigned the contract and security interests to the Bank.  Later in 2007, the Bank filed a UCC-1 financing statement identifying both items as its collateral, and also got its lien noted on a certificate of title the State of Kansas issued for the trailer.  The Trustee concedes these actions properly perfected the Bank's security interests, and also concedes the Bank's lien in the trailer has remained perfected ever since.

On June 26, 2009, however, the Debtor, for reasons not known to the Bank or the Trustee, obtained an Oklahoma certificate of title for the Boat.  Although the certificate was issued by Oklahoma, it showed the Debtor's address to be in Kansas.  The parties agree the Debtor was a Kansas resident at all relevant times.  Neither the Bank's nor any other lien was noted on the Oklahoma certificate of title.  Although the space on the title where liens were to be noted was left blank, the following statement appeared under that space: "It is hereby certified that according to the records of the Oklahoma Tax

2

Commission, the person named hereon is the owner of the vessel/motor described above which is subject to a lien(s) as shown; however, the vessel/motor may be subject to other liens or security interests." The Trustee contends the issuance of this certificate of title terminated the perfection of the Bank's lien on the Boat.

In March 2010, the Debtor filed a Chapter 7 bankruptcy. He listed the Boat as an asset subject to the Bank's lien. He did not list any trailer among his assets, but the parties believe the Boat was sitting on a trailer.

In April 2010, the Trustee filed the complaint that commenced this proceeding, seeking to avoid the Bank's lien on the Boat. A default judgment avoiding the lien was entered on June 8, 2010, and the adversary proceeding was closed the following month. On June 29, 2010, the Trustee filed a motion in the Debtor's main bankruptcy case for authority to sell the Boat and a trailer. In August 2010, the Trustee filed a document reporting that he had sold the Boat and the trailer, and after paying certain sale expenses, obtained a net of $11,325.

In March 2011, the Bank filed a motion to reopen this adversary proceeding and vacate the default judgment against it. On June 30, 2011, the Court issued an opinion determining the Trustee had not made proper service of process on the Bank, and vacating the judgment as void.

In August 2011, the Bank filed its present motion for summary judgment, arguing that its lien on the Boat remained perfected despite the issuance of the Oklahoma certificate of title, and that it also had a valid, perfected lien on the trailer the Trustee had

3

sold. The Trustee responded that the Oklahoma certificate of title terminated the Bank's perfection of its lien in Kansas, but conceded that the Bank's lien on the trailer was superior to the estate's interest in it. Consequently, this opinion will address the perfection of the Bank's lien on the Boat, but not its lien on the trailer.

**Positions of the parties**

The Bank argues that under both the Kansas and the Oklahoma versions of the Uniform Commercial Code, § 9-316(d)[1] provides for the perfection of its lien on the Boat by the financing statement it filed in Kansas to continue despite the issuance of the Oklahoma certificate of title for the Boat. The Bank contends its Kansas perfection continues until it would have ceased to be effective under Kansas law, citing examples given in the Official UCC Comments to § 9-316, and also citing Barkley and Barbara Clark's treatise on secured transactions.[2]

The Trustee concedes the Bank's lien was initially properly perfected in Kansas, but argues that when the certificate of title was issued, the manner of perfection changed and under the Oklahoma Vessel and Motor Registration Act, notation of the lien on the certificate of title was the exclusive means to perfect the lien.[3] Section 1-9-337 of the Oklahoma UCC, the Trustee continues, provides that when a security interest in goods

---

[1] K.S.A. 2010 Supp. 84-9-316(d) and Okla. Stat. Ann. tit. 12A, § 1-9-316(d) (West 2001).

[2] Official UCC Comment 5, examples 8 & 9; 2 Barkley & Barbara Clark, *The Law of Secured Transactions under the Uniform Commercial Code*, ¶ 15.06 (A.S. Pratt & Sons, 3d ed. 2011).

[3] Citing Okla. Stat. Ann. tit. 63, § 4013(A)(1) (West 2004).

4

(like the Boat) is perfected under the law of another jurisdiction and Oklahoma issues a certificate of title that does not show the security interest, that security interest loses its priority to either (1) a buyer who thereafter gives value and receives the goods without knowledge of the security interest, or (2) a conflicting security interest in the goods that thereafter attaches and is perfected without the conflicting secured party's knowledge of the prior security interest.[4] Section 544 of the Bankruptcy Code,[5] he says, gives him the rights of "a hypothetical lien claim without notice" of the Bank's interest, and his interest therefore has priority over the Bank.

In reply, the Bank argues the Trustee does not fit within any exception under Oklahoma law to the first-to-perfect lien-priority rule. For the Trustee to prevail under § 1-9-337 of the Oklahoma UCC, the Bank contends, he would have to show he had no knowledge of the Bank's security interest, but because he is a Kansas bankruptcy trustee and the Debtor was domiciled in Kansas at all relevant times, the financing statement the Bank filed in Kansas gave him implied, constructive, or inquiry notice of the Bank's security interest. Alternatively, the Bank continues, § 544(a) of the Bankruptcy Code gives the Trustee bona fide purchaser status with respect to real property but not to personal property like the Boat, with respect to which his status is that of a lien or attachment creditor. A lien or attachment creditor, the Bank continues, is not equivalent to a competing secured creditor under § 1-9-337. Therefore, the Bank concludes, the

---

[4]Citing Okla. Stat. Ann. tit. 12A, § 1-9-337 (West 2001).

[5]11 U.S.C.A. § 544.

5

Trustee's rights and powers under § 544(a) of the Bankruptcy Code are not applicable or sufficient to defeat the Bank's lien.

**Discussion**

As a preliminary matter, the Court must determine whether the Oklahoma certificate of title issued for the Boat qualifies as a perfection document under the UCC. Both the Kansas and the Oklahoma versions of Revised Article 9 of the UCC define "certificate of title" to mean "a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral."[6] The Oklahoma Vessel and Motor Registration Act contains such provisions.[7] Consequently, the Oklahoma certificate of title issued for the Boat constitutes a "certificate of title" under Revised Article 9 of both the Kansas and the Oklahoma versions of the UCC.

Although the parties have not addressed the question, the Court must next determine whether Kansas or Oklahoma law governs their dispute. Both states had adopted Revised Article 9 of the UCC (with few deviations from the proposed uniform text) before the Debtor bought the Boat, so they have essentially identical choice of law rules for secured transactions covered by Article 9. The Court has found no case law

---

[6]K.S.A. 2010 Supp. 84-9-102(10); Okla. Stat. Ann. tit. 12A, § 1-9-102(10) (West 2001).

[7]*See* Okla. Stat. Ann. tit. 63, § 4013 (West 2004).

6

addressing a choice of law question under Revised Article 9 like the one presented here.[8]

Analysis of the choice of law question begins with § 9-303 of the UCC. As relevant here, the Oklahoma version provides:

> (a) This section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.
>
> (b) Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. . . .
>
> (c) The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.[9]

The Kansas version of § 9-303 is identical except subsection (a) has been labeled "Applicability of section," subsection (b) has been labeled "When goods covered by certificate of title," and subsection (c) has been labeled "Applicable law."[10] Nothing in the labels affects the meaning of the provisions. The summary judgment materials show the Debtor resided in Kansas at all relevant times, and bought the Boat in Kansas as well. Nevertheless, § 9-303(a) makes clear the Boat could be covered by an Oklahoma certificate of title even though nothing the parties presented shows either the Debtor or

---

[8]The Court did find an article written by Professor Alvin C. Harrell of the Oklahoma City University School of Law that has proven to be helpful. "A Roadmap to Certificate of Title Issues in Revised UCC Article 9," 53 Consumer Fin. L.Q. Rep. 202 (Summer 1999).

[9]Okla. Stat. Ann. tit. 12A, § 1-9-303 (West 2004).

[10]K.S.A. 2010 Supp. 84-9-303.

7

the Boat had any relationship to Oklahoma. The fact the certificate of title was issued in the Debtor's name[11] indicates he delivered an application for one to the appropriate authority, and the parties have not suggested there was anything invalid about his application. For purposes of this opinion, the Court will assume the Debtor's application for and the issuance of the Oklahoma certificate of title were both valid.

Section 1-9-311(a)(2) of the Oklahoma UCC provides that filing a financing statement is not necessary or effective to perfect a security interest in property subject to a certificate of title statute like the Oklahoma Vessel and Motor Registration Act (OVMRA).[12] Furthermore, the OVMRA provides that a security interest in a vessel as to which a certificate of title may properly be issued may be perfected only by submitting the proper documents to the proper government authority or agent.[13] By themselves, these provisions would suggest that the Bank's lien ceased to be perfected when the Boat became covered by the certificate of title since the Bank did nothing to perfect its lien under the OVMRA. The OVMRA establishes a general rule that a security interest in a vessel (like the Boat) must be submitted for notation on a certificate of title to become perfected. However, Revised Article 9 of the Oklahoma UCC contains provisions

---

[11]The title also listed "and/or Jina Gannon," presumably the Debtor's wife, who did not join him in filing for bankruptcy.

[12]Okla. Stat. Ann. tit. 12A, § 1-9-311(a)(2) (West 2001) (citing Okla. Stat. Ann. tit. 63, § 4013 as example of statute requiring notation on or delivery for notation on certificate of title for security interest to be perfected). There is an exception for dealer inventory, but nothing presented suggests the Debtor was a boat dealer.

[13]Okla. Stat. Ann. tit. 63, § 4013(A)(1) (West 2004).

8

addressing exactly the situation where a security interest was already perfected under another state's law when the vessel became covered by a certificate of title issued under that Act. The Oklahoma Supreme Court has said: "A long-standing rule of construction in this jurisdiction is that where there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes something different from the general statute, the special statute, and not the general statute, applies."[14]

Subsections (b) and (c) of § 1-9-311 of the Oklahoma UCC point to two exceptions to the general rule that the OVMRA governs perfection of security interests in vessels:

> (b) Compliance with the requirements of a statute . . . described in subsection (a) of this section for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. Except as otherwise provided in . . . subsections (d) and (e) of Section 1-9-316 of this title for goods covered by a certificate of title, a security interest in property subject to a statute . . . described in subsection (a) of this section may be perfected only by compliance with those requirements. . . .
>
> (c) Except as otherwise provided in . . . subsections (d) and (e) of Section 1-9-316 of this title, duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by a statute . . . described in subsection (a) of this section are governed by the statute . . . . In other respects, the security interest is subject to this article.

Both these subsections state that subsections (d) and (e) of § 1-9-316 establish exceptions to § 1-9-311(a), which otherwise defers perfection questions to certificate of title statutes

---

[14]*City of Tulsa v. Smittle*, 702 P.2d 367, 371 (1985); *see also State ex rel. Dept. of Transp. v. Opubco, Inc.*, 50 P.3d 1146, 1148 (Okla. Civ. App. 2002) (citing *Smittle* to support statement: "It also is a general rule of construction that where two statutes deal with the same subject matter, one specific and one general, the specific statute controls, with both provisions being given harmonious effect.").

9

like the OVMRA. A review of § 1-9-316(d) and (e) shows they create two special rules for the specific situation where an Oklahoma certificate of title showing no lien is issued for a vessel that is subject to a security interest that was already perfected under another state's law.

Section 1-9-316 of the Oklahoma UCC is labeled "Continued perfection of security interest following change in governing law," and subsections (d) and (e) are both relevant here. They provide:

> (d) Except as otherwise provided in subsection (e) of this section, a security interest in goods covered by a certificate of title which is perfected by any method under the law of another jurisdiction when the goods become covered by a certificate of title from this state remains perfected until the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered.
>
> (e) A security interest described in subsection (d) of this section becomes unperfected as against a purchaser of the goods for value and is deemed never to have been perfected as against a purchaser of the goods for value if the applicable requirements for perfection under subsection (b) of Section 1-9-311 or Section 1-9-313 of this title are not satisfied before the earlier of:
>
>> (1) the time the security interest would have become unperfected under the law of the other jurisdiction had the goods not become covered by a certificate of title from this state; or
>>
>> (2) the expiration of four (4) months after the goods had become so covered.

Subsection (d) would require looking to Kansas law to determine whether the Bank's lien was perfected when the title was issued, but the Trustee has already conceded it was perfected by the financing statement the Bank had filed. Subsection (d) therefore

10

provides, despite the issuance of the clean Oklahoma certificate of title, for the perfection of the Bank's lien to continue until it would end under Kansas law.

The Trustee has not argued the Bank's lien might have become unperfected under Kansas law for any reason other than the issuance of the Oklahoma certificate of title. The passage of time can cause perfection of a security interest in Kansas by filing to lapse, but with certain exceptions not applicable here, a Kansas financing statement is effective for five years from the date of filing.[15] The Bank filed its financing statement in 2007, so the statement would remain effective into 2012, well after the Debtor filed his bankruptcy in 2010. Consequently, § 1-9-316(d) of the Oklahoma UCC means the Bank's perfection of its lien in the Boat generally continued to be effective even after the Boat became covered by the Oklahoma certificate of title. In their treatise on secured transactions under the UCC, Barkley and Barbara Clark suggest this provision would probably keep the Bank's lien perfected against a bankruptcy trustee despite the issuance of the certificate of title.[16] The Court concludes the provision does, indeed, do so.

Uniform Commercial Code Comment 5 to § 1-9-316 provides an example that confirms this interpretation of subsection (d).

> Subsections (d) and (e) address continued perfection of a security interest in goods covered by a certificate of title. The following examples explain the operation of those subsections.

---

[15] K.S.A. 2010 Supp. 84-9-515(a).

[16] 2 Barkley Clark and Barbara Clark, *The Law of Secured Transactions under the Uniform Commercial Code*, ¶ 15.06 (3d ed. 2011).

11

> **Example 8:** Debtor's automobile is covered by a certificate of title issued by [Kansas]. Lender perfects a security interest in the automobile by complying with [Kansas'] certificate-of-title statute. Thereafter, Debtor applies for a certificate of title in [Oklahoma]. Six months thereafter, Creditor acquires a judicial lien on the automobile. Under Section 9-303(b), [Kansas] law ceases to govern perfection; rather, once Debtor delivers the application and applicable fee to the appropriate [Oklahoma] authority, [Oklahoma] law governs. Nevertheless, under [Oklahoma's] Section 9-316(d), Lender's security interest remains perfected until it would become unperfected under [Kansas] law had no certificate of title been issued by [Oklahoma]. (For example, [Kansas'] certificate-of-title statute may provide that the surrender of [a Kansas] certificate of title in connection with the issuance of a certificate of title by another jurisdiction causes a security interest noted thereon to become unperfected.) If Lender's security interest remains perfected, it is senior to Creditor's judicial lien.[17]

The Comment goes on to explain that the result in Example 8 does not depend on the fact the original perfection was by notation on a certificate of title, but that subsection (d) of § 1-9-316 applies regardless of the method of perfection in the first state. In other words, the Bank's perfection in Kansas by filing a financing statement likewise continued to be senior to a judicial lien.

Because the Bank took no steps to perfect its lien after the Boat became covered by the Oklahoma certificate of title, § 1-9-316(e) of the Oklahoma UCC would make the lien vulnerable to a purchaser of the Boat for value after the certificate of title was issued. But the Trustee does not qualify as a purchaser for value under the Oklahoma UCC. In the Oklahoma UCC, "purchase" means "taking by sale, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction

---

[17]Okla. Stat. Ann. tit. 12A, § 1-9-316, UCC Comment 5 (West 2001). The example actually uses Illinois and Indiana as the states involved, but the Court substituted Kansas for Illinois and Oklahoma for Indiana to conform it to the facts of this case.

12

creating an interest in property," and "purchaser" means "a person who takes by purchase."[18] The Trustee is relying here on his status under § 544(a) of the Bankruptcy Code.

Section 544(a) gives bankruptcy trustees the following rights and powers:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by —
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> >
> > (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
> >
> > (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Subsection (3) gives the Trustee the rights and powers of a bona fide purchaser of real property, but not of personal property,[19] so it does not help the Trustee here. The only

---

[18]Okla. Stat. Ann. tit. 12A, § 1-201(29) & (30) (West 2004).

[19]5 *Collier on Bankruptcy*, ¶ 544.05 (Alan N. Resnick & Henry J.Sommer, eds.-in-chief, 16th ed. 2011).

13

rights and powers subsections (1) and (2) give the Trustee that might help him in this case are those the status of a judicial lien creditor under subsection (1) give him, since that provision at least contains one word — "lien" — that is included in the Oklahoma UCC's definition of "purchase." But § 101(36) of the Bankruptcy Code[20] defines "judicial lien" to mean "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," which makes clear that "a judicial lien" in § 544(a)(1) refers only to a lien obtained in a non-voluntary manner. The Oklahoma UCC's definition of "purchase," by contrast, is limited to rights and interests obtained voluntarily, as made clear by the phrase at the end of the definition: "any other voluntary transaction creating an interest in property." Consequently, the Trustee's rights under § 544(a) do not gain him any protection under § 1-9-316(e) of the Oklahoma UCC.

But the Trustee argues yet another provision of the Oklahoma UCC, § 1-9-337, gives his § 544 rights and powers priority over the Bank's lien in the Boat. That section provides:

> If, while a security interest in goods is perfected by any method under the law of another jurisdiction, this state issues a certificate of title that does not show that the goods are subject to the security interest or does not contain a statement that they may be subject to security interests not shown on the certificate:
>
> > (1) a buyer of the goods, other than a person in the business of selling goods of that kind, takes free of the security interest if the buyer gives value and receives delivery of the goods after issuance of the certificate and without

---

[20] 11 U.S.C.A. § 101(36).

14

>knowledge of the security interest; and
>
>>(2) the security interest is subordinate to a conflicting security interest in the goods that attaches, and is perfected under subsection (b) of Section 1-9-311 of this title, after issuance of the certificate and without the conflicting secured party's knowledge of the security interest.

The Trustee correctly points out that if all the requirements of this statute were satisfied for either a buyer or a holder of a conflicting security interest, the provision would give that party's interest in the Boat priority over the Bank's lien. However, the requirements were not met with respect to the Trustee's status under § 544(a) of the Bankruptcy Code.

The Oklahoma certificate of title involved in this case did not show the Boat was subject to any liens, but did contain a statement that the Boat might be subject to liens or security interests not listed on it. This raises the question whether the provision can apply if the certificate of title either lists no liens or does not state that other liens may exist but not both, or can apply only if both those things are true. UCC Comment 2 to § 1-9-337 makes clear that the provision was not intended to apply unless *both* preliminary requirements were met — that is, no lien was listed *and* no statement was included that other liens might exist. Comment 2 reads, in pertinent part:

>2. **Protection for Buyers and Secured Parties.** This section affords protection to certain good-faith purchasers for value who are likely to have relied on a "clean" certificate of title, i.e., one that neither shows that the goods are subject to a particular security interest nor contains a statement that they may be subject to security interests not shown on the certificate. Under this section, a buyer can take free of, and the holder of a conflicting security interest can acquire priority over, a security interest that is perfected by any method under the law of another jurisdiction.

15

The Comment also makes clear that no protection was intended for anyone who, like the Trustee, was not likely to have relied on the absence of lien notations on the certificate of title. Unlike a buyer or party taking a security interest in goods, a judgment lien creditor does not rely on any certificate of title to the goods before deciding to acquire a judgment lien in the goods. A judgment lien creditor is simply using legal process to enforce its claim against its debtor to the extent it is able to do so. Thus, the Trustee cannot rely on § 1-9-337 to defeat the Bank's lien because (1) the certificate of title alerted anyone who looked at it that the Boat might be subject to other liens, and (2) § 544(a) of the Bankruptcy Code does not give the Trustee the rights and powers of a party who was likely to have relied on the clean certificate of title.

In this case, the Court concludes Revised Article 9 of the Oklahoma UCC overrides the general certificate of title lien-notation rule of the OVMRA and keeps the Bank's lien perfected and senior to the Trustee's § 544(a) rights and powers. In 2006, in an unpublished decision, the Court reached the opposite conclusion in *In re Reed*, a case involving facts similar to those involved here but governed by *old* Article 9 of the Oklahoma UCC.[21] As explained in *Reed*, under old Article 9, when a boat subject to a lien perfected in Kansas by filing was brought into Oklahoma, where it became subject to the OVMRA, which then, as now, required notation on a certificate of title to perfect a lien on a boat, the lien ceased to be perfected after four months (or earlier if the Kansas

---

[21]*Davis v. Reed (In re Reed)*, Case No. 04-13824, Adv. No. 04-5302, Memorandum and Order Granting in Part and Denying in Part Trustee's Complaint for Lien Avoidance (Bankr. D. Kan. Jan. 19, 2006).

perfection would have ended earlier under Kansas law).[22] As explained above, Revised Article 9 provides for a different result, leaving the lien perfection in effect with respect to creditors (such as judgment lien creditors) who would not have taken any action in reliance on a certificate of title that showed the boat to be unencumbered.

**Conclusion**

For these reasons, the Court concludes the Bank's lien perfection continued to be effective as against the Trustee, whose rights in the Boat under § 544(a)(1) of the Bankruptcy Code are limited to those of a judgment lien creditor. The Bank's motion for summary judgment will be granted.

The foregoing constitutes a decision under Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56(c)(2) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Bankruptcy Rule 7058 and Civil Rule 58(a).

# # #

---

[22]*Id.*, slip op. at 8-9 (interpreting Okla. Stat. Ann. tit. 12A, § 1-9-103.1 (1999)).